IOWA ELECTRIC COMPANY, Appellant, v. INCORPORATED TOWN OF . WINTHROP, Appellee.

MUNICIPAL CORPORATIONS: Contracts—Purchase of Electric Current. A city or town may not, *without authorization from the voters,* enter into a valid contract for the purchase of electric current. (Sec. 720, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Contracts—Nonestoppel as to Void Contract. A city or town is not estopped to deny the validity of a void contract, *even in so far as it has been executed.*

DAMAGES: Measure of Damages—Contract Price. The contract price of an article is necessarily the proper measure of recovery.

WITNESSES: Cross-Examination—Discretion of Court. The extent of the cross-examination of a witness is quite largely within the discretion of the court.

EVIDENCE: Materiality—Recovery Under Void Contract. When the contract sued on is found to be wholly void, all testimony bearing on the amount of recovery is manifestly immaterial.

*Appeal from Buchanan District Court.*—E. B. STILES, Judge.

APRIL 4, 1924.

REHEARING DENIED, JUNE 28, 1924.

ACTION to recover on two written contracts known as Exhibits A and B. The claim under Exhibit A was for recovery of $1,800, as the agreed price for reconstruction of a direct-current system of lighting and the installation of an alternating system, and for $160 due for depreciation of a certain motor. Under Exhibit B, plaintiff claimed payment for electric current furnished to defendant thereunder. Defendant admitted liability under the contract Exhibit A, for reconstructing the lighting system and for the $126 difference in motors. Defendant denied liability under contract Exhibit B, averring that said contract was invalid on the ground that a contract for the purchase of electric current by defendant town was expressly for-

bidden by statute, unless authorized by the voters at an election, which was not done. The trial court sustained the contention of defendant, and withdrew from consideration of the jury plaintiff's claim under Exhibit B. Defendant interposed a counterclaim for $4,500, based on the contract Exhibit A, for recovery of the purchase price of certain electric equipment which plaintiff agreed to purchase from it. The only issues submitted to the jury were under the counterclaim. The jury found for defendant in the amount of the difference between the admitted amount owed plaintiff under Exhibit A, and the amount of the counterclaim. Facts appear in the opinion. From the judgment entered on the verdict, plaintiff appeals.—*Affirmed.*

*John A. Reed, Ralph Maclean, D. C. Chase, Jr.,* and *Hasner & Cherney,* for appellant.

*R. J. O'Brien* and *Edwards, Longley, Ransier & Harris,* for appellee.

Arthur, C. J.—I. About 1912, the town of Winthrop erected a direct-current electric light and power plant, by which it operated the waterworks and the lights of the town and furnished electricity to patrons for light and power purposes. The plaintiff is a corporation engaged in operating high-pressure transmission lines for the distribution and sale of electricity. Some time prior to February, 1917, negotiations were entered into between plaintiff and defendant to secure an agreement whereby the defendant would extend its high-voltage line to Winthrop, and the town of Winthrop would purchase electricity from it. These negotiations resulted in a resolution adopted by the town council of Winthrop, authorizing the mayor of said town to enter into an agreement with plaintiff company whereby the company was to extend its transmission lines to Winthrop and build a substation, and the town was to rebuild its system to make the same available for alternating current, and to purchase electricity from plaintiff necessary to operate its municipal plant. The company agreed to purchase the town's direct-current-pro-

1. MUNICIPAL CORPORATIONS: contracts: purchase of electric current.

ducing machinery at the agreed price of $4,500, after the change was completed and was in operation. The town employed plaintiff company to make the necessary change in its system to accommodate alternating-current electricity, to be furnished by plaintiff. Under this agreement, plaintiff company constructed its line to Winthrop and rebuilt the town's distribution system, installed a step-down substation, and furnished the necessary apparatus to pump water for the town with alternating current, and commenced to furnish electricity to the town, which the town received and continued to use. Defendant did not pay for the electricity furnished to it by plaintiff from the time the contract began, in 1917, to November, 1919, refusing to make payment on the claim that the company had failed to carry out its contract in regard to the purchase of machinery from the town: that is, that plaintiff had not paid to the town the $4,500 agreed upon as the purchase price of the direct-current machinery of the town. Beginning with November, 1919, the town began to pay for the electricity furnished to it by plaintiff. The town then "figured it was even" with the company, by withholding payment for current up to November, 1919, on account of the company's failure to pay for machinery purchased from the town.

This suit was instituted to recover for the electricity furnished under the contract Exhibit B, which had not been paid for by the town from the beginning of the contract up to November, 1919, in the amount of $3,562.70, and for reconstruction of the plant owned by the town, at the agreed price of $1,800. Defendant admitted liability on the claim for reconstruction of its system in the amount of $1,800, and for $126 as depreciation on a certain motor, and said claims were not submitted to the jury. The court refused to submit, and withdrew from the consideration of the jury, plaintiff's claim under contract Exhibit B, for furnishing electricity; so that there remained and was submitted to the jury only the cause of action set up by defendant against the plaintiff in its counterclaim,—to recover damages because of plaintiff's failure to pay for equipment sold by the town to plaintiff.

II.   The major question in the case presented on this appeal

involves the correctness of the trial court's ruling in sustaining defendant's motion for a directed verdict, based on the ground that the contract for the purchase of electricity by the town was void because not submitted to the voters of the incorporated town of Winthrop for their approval. Plaintiff assigns said ruling as error, and presents the same question by assigning as error the overruling of plaintiff's motion for a new trial.

By the terms of the contract Exhibit B, plaintiff agreed to furnish defendant "electric current in sufficient quantities and of ample pressure to at all times supply the town lighting system, etc.;" and the town agreed to use such current exclusively for the town lighting system, and to pay for the current monthly at a rate fixed in the contract. By its terms, the contract was to be in force for the period of twenty-five years from and after the date service was first rendered. The contract provided that the prices fixed in the contract should be effective for the first two years, and the prices thereafter were to be agreed upon by the parties or determined by arbitration, each party having the right to demand an adjustment of prices every two years.

After amendment by the thirty-fourth general assembly, Section 720 of the Code of 1897, omitting parts not material in this discussion, read as follows:

"They [cities and towns] shall have power to purchase, establish, erect, maintain and operate * * * electric light or electric power plants, with all the necessary * * * machinery, apparatus and other requisites of said works or plants, and lease or sell the same. * * * No such works or plants shall be authorized, established, erected, purchased, leased or sold, or franchise extended or renewed or amended, unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or special election."

Said section was amended by Chapter 66 of the Acts of the Thirty-fifth General Assembly by adding to the section, as amended, in the tenth line thereof, the following:

"And they shall have power to enter into contracts with persons, corporations or municipalities for the purchase of heat, gas, water, and electric current for either light or power purposes, and shall have power to sell the same either to residents

of such municipality, or to others, including corporations, * * *"

It was further amended by inserting after the word "amended," in the twelfth line of said section, as amended, the words "or contract of purchase entered into."

Counsel for plaintiff take the position that defendant town had the right to enter into the contract for the purchase of "electric current" without an election, asserting that the contracts forbidden by Section 720, without approval by the voters, are contracts for the purchase of electric light *plants,* and not contracts for the purchase of electric *current.* Counsel for defendant town contend that the town did not have the right to enter into the contract without approval of the electors and that, the contract having been made without an election authorizing the same, it is void because in violation of the statute which expressly, as defendant claims, forbids the town council, and likewise the electric company, from making a contract of that character without approval of the voters.

Counsel for defendant urge that the words "or contract of purchase entered into," in the above quoted amendment to Section 720, refer to contracts for the purchase of *electricity;* while counsel for plaintiff contend that said clause only refers to and affects contracts for the purchase of a *plant,* existing in the statute before the amendment. We think the construction placed by plaintiff upon the statute as amended is not warranted. In support of their view, counsel cite *McGuire v. Chicago, B. & Q. R. Co.,* 131 Iowa 340, in which we said:

"Unless the contrary intent is clearly indicated, the amended statute is to be construed as if the original statute had been repealed and a new and independent act in the amended form had been adopted."

We think it is not necessary to apply the rule announced in the *McGuire* case to ascertain the purpose and meaning of the statute as amended. But applying such rule, which is sound, we think the intent is clearly indicated in the statute as amended, to forbid entering into a contract of purchase of "electric current." It seems to us that such was the manifest purpose and intent of the statute as amended. The title of the act amending the statute explicitly mentions "electric current." The original

statute forbade the purchase of "works or plants," and there was no occasion to repeat that prohibition in an amendment. The clause "or contract of purchase entered into" was placed in the body of the old statute, and the rest of the amendment, defined in the title as "an act * * * to authorize cities and towns to enter into contracts to purchase heat, gas and electric current and to sell same," is an addition to the original statute.

Section 720, as amended, omitting parts immaterial in this discussion, the words italicized being the amendment by the thirty-fifth general assembly, now reads as follows:

"They [cities and towns] shall have power to purchase, establish, erect, maintain and operate * * * electric light or electric power plants, with all the necessary * * * works or plants, and lease or sell the same. * * * *And they shall have power to enter into contracts with persons, corporations or municipalities for the purchase of * * * electric current for either light or power purposes, and shall have power to sell the same either to residents of such municipality, or to others* * *.* No such works or plants shall be authorized, established, erected, purchased, leased or sold, or franchise extended or renewed or amended, or *contract of purchase entered into,* unless a majority of the legal electors voting thereon vote in favor of the same at a general, city or special election."

We think that the statute as it now stands expressly forbids the making of a contract which plaintiff seeks to enforce, without the approval of the voters, and that said contract cannot be given effect. It is the general rule in this jurisdiction and elsewhere that contracts in violation of statute are void. Numerous cases might be cited, holding to that effect. Some of them are: *Marienthal v. Shafer,* 6 Iowa 223; *Reynolds v. Nichols & Co.,* 12 Iowa 398; *Pike v. King,* 16 Iowa 49; *Harrison County v. Ogden,* 133 Iowa 677; *Blair v. Fitch,* 189 Iowa 1307; *Thomas v. City of Richmond,* 12 Wall. (U. S.) 349 (20 L. Ed. 453). Also, see 13 Corpus Juris 411 to 420.

Counsel for plaintiff, in an able and illuminating argument, review the history of legislation relating to the authority given to cities and towns to purchase, maintain, and operate electric light and electric power plants, and the evolution from the use

of direct current to alternating-current power. Counsel for appellant strenuously urge that, even though forbidden to do so by statute, the defendant town, through its council, had author-ity and power to enter into the contract Exhibit B, under which plaintiff seeks to recover for the purchase of electric current, without the approval of the electors of the town. Their argument is that, because the town of Winthrop was engaged in the business of selling electric current to its inhabitants, as well as of using the current for municipal purposes, the town could enter into a valid contract for the purchase of such current without the authority of the voters. We think such position untenable. Such construction is contrary to the plain terms of the statute. Such construction would render the statute meaning-less and impotent. If the position of counsel for plaintiff is correct, the defendant town,—which the record shows sells electric current to private consumers, "to others,"—would be under no legal restraint in making contracts to buy electric current, either as to quantity, price, or length of time such contract should continue, and might do so without submitting the proposition to the electors for their approval. We cannot agree with that position. Counsel for plaintiff argue that because, under the provisions of Section 724, Supplement to the Code, 1913, the town may sell electric power acquired from the plaintiff, Section 724, being a later statute than Section 720, must be construed to be a general grant of permission to deal in the commodity, without the necessity of an election. We think such position untenable. The power "to sell" given by Section 724 does not in any way render nugatory or modify the plain terms of Section 720, as amended, requiring approval of the electors to authorize the town to enter into contracts to purchase "electric current."

We have carefully examined the cases cited by counsel for plaintiff in support of their position that it was not the intent of the legislature, in the enactment of Section 720 and amendments thereto, to deprive the town of the right to contract for a supply of electricity to run its municipal plant except after submission of the question at an election. We think the cases cited are distinguishable from the instant case, and do not sup-

port the position taken by plaintiff. Of the cases cited by counsel for appellant, *Marion Water Co. v. City of Marion,* 121 Iowa 306, *Davenport Gas & Elec. Co. v. City of Davenport,* 124 Iowa 22, *First Nat. Bank of Red Oak v. City of Emmetsburg,* 157 Iowa 555, *Hansen v. Town of Anthon,* 187 Iowa 51, do not involve a want of power, as in the instant case, but involve mostly irregularities. Other cases cited were in equity, where the rules of law do not obtain, and others relate to rules governing private corporations; while others, *Clark v. City of Des Moines,* 19 Iowa 199, and *Reynolds v. Lyon County,* 121 Iowa 733, are cases where the original debts for which the contracts involved were given, were valid and enforcible independently of the contracts sued on. It must be borne in mind that Section 720 does not only withhold power from the town council to enter into such a contract as the one here involved, but contains the positive command that it shall not do so, without approval of the voters. It has been the settled doctrine in this state since the decision in *Marienthal v. Shafer,* supra, continuing up to *Blair v. Fitch,* supra, that the court will not lend assistance to enforce any contract the making of which is forbidden by statute.

III. Counsel for plaintiff strenuously urge that, even if the statutes required submission of the contract involved to the voters at an election for approval, which they do not concede, the town is estopped to deny the validity of the contract in so far as it has been executed. It does appear from the record that the town used the electric current furnished by plaintiff for the purpose of lighting its streets. This argument carries a forceful appeal. It would seem just that the town should pay for the electric energy which it has received from plaintiff and used at an agreed price. But we are not permitted, in the face of the positive command of the statute that no such contract shall be made without the approval of the electors, to grant relief to plaintiff. Counsel concede that, when exercising legislative functions, the council is not estopped by its acts. *Town of Woodward v. Iowa R. & Lt. Co.,* 189 Iowa 518.

2. MUNICIPAL CORPORATIONS: contracts: non estoppel as to void contract.

Counsel contend that, in conducting an electric light plant, the town was acting in its purely private proprietary capacity,

and was subject to the same rule of estoppel as individuals and private corporations. In support of such position they cite *Marion Water Co. v. City of Marion*, supra, and *First Nat. Bank of Red Oak v. Emmetsburg*, supra. These cases are not in point. They do not involve a want of power, as in the instant case. They involve questions where the city had the power to contract, but exercised such power in an irregular manner. Moreover, we think it immaterial and beside the question, whether the council was acting in a so-called private capacity or was exercising legislative function in entering into the contract. The statute positively forbids the council from entering into such a contract in any capacity, without the approval of the voters. We think it is the rule, universally applied, that, if they were officers of a municipality where, as in the instant case, the town council was forbidden by statute to make the contract involved, without approval of the voters, a future council is not estopped from repudiating liability on such *ultra vires* contracts. In support of this proposition, see *Langan & Noble v. Sankey*, 55 Iowa 52; *Cedar Rapids Water Co. v. City of Cedar Rapids*, 117 Iowa 250; *Citizens' Bank of Des Moines v. City of Spencer*, 126 Iowa 101; *Harrison County v. Ogden*, 133 Iowa 9; *Bay v. Davidson*, 133 Iowa 688. In the *Ogden* case we said:

"The county is not estopped by the unauthorized acts of its officers, either in attempting in the first instance to incur indebtedness nor in attempting to ratify unlawful obligations already entered into."

In *Bay v. Davidson*, supra, we said:

"That the town has received the benefits of the contract is not material. This court is committed to the doctrine that, the contract being invalid, it cannot be rendered valid, so as to support an action for recovery, by invoking the doctrine of estoppel."

We hold that, the contract sued on being illegal and void in its inception, because denounced by statute, plaintiff company, in entering into said contract, did so at its peril, and no estoppel arose.

IV. Other assignments are directed to claimed errors on the trial of defendant's counterclaim, which was the only fact

issue in the case and the only issue submitted to the jury. The counterclaim was based upon a provision of the contract Exhibit A, entered into on February 16, 1917, by the parties, as follows:

"We further agree to pay to the town the sum of $4,500 for the engines, dynamos, switchboard, batteries, tanks and all other appliances owned and used by the town in connection with the electric power house, it being understood that such machinery shall be in as good condition as on the date of this agreement, ordinary wear and tear excepted. * * * This sale to be consummated after the successful operation of the lighting system with alternating current."

Defendant alleged that plaintiff took possession of its plant and of the machinery enumerated in the contract Exhibit A, above quoted, and disconnected such equipment from said system and completed installation of the alternating-current system, and had the same in successful operation on or about December 21, 1917, at which time the engines, dynamos, switchboard, batteries, tanks, and appliances, above mentioned, were "in as good condition as on the date of said agreement, ordinary wear and tear excepted," and became thereupon the property of plaintiff. Defendant admitted the language of the contract above set forth, and denied other allegations of the counterclaim. In submitting the counterclaim to the jury, the court instructed that:

"All the material allegations of the defendant's counterclaim have either been admitted by plaintiff or are supported by the uncontradicted evidence, except the allegation concerning the condition of the machinery in question on the 21st day of December, 1917. You are therefore further instructed that the only allegation of defendant's counterclaim which requires consideration from you is the allegation that, on or about the 21st day of December, 1917, the engines, dynamos, switchboard, batteries, tanks, and appliances mentioned in the contract were in as good condition as on the date of such agreement, ordinary wear and tear excepted."

Plaintiff complains that an instruction requested by it was not given, to the effect that the defendant failed to prove any proper measure of damages suffered by it by reason of the

3. DAMAGES: measure of damages: contract price.

breach of the contract, if any breach there was, under which defendant claimed $4,500 for the sale of direct-current machinery to plaintiff. There was no error in refusing the instruction. The price of the machinery was agreed upon, and that would be the proper measure of damages, if it were entitled to damages. If defendant failed to prove by a preponderance of the evidence that the machinery was "in as good condition as on the date of such agreement, ordinary wear and tear excepted," it would not be entitled to recover at all, and the court so instructed.

Plaintiff also complains because an instruction requested was not given, to the effect that it was incumbent on the defendant to prove that the contract Exhibit A must have been so far executed as to pass title to the property claimed to have been sold to plaintiff, and that defendant delivered said property to plaintiff, or offered to do so, and tendered said property in as good condition as the same was at the date and time of the execution of the contract, and that defendant had failed to prove either that said contract was so far executed as to pass title to said property to plaintiff, or that the defendant ever delivered said property to plaintiff, and that, on account of said failure, the defendant was not entitled to recover on the counterclaim. We think it was not error to refuse said instruction. It was clearly proved, without dispute, that the property was delivered to defendant. The record discloses that plaintiff took possession of the property in the reconstruction of defendant's plant, to make the change from direct to alternating-current power, and had possession of it on the 21st day of December, 1917, when the change was completed. The only issue remaining under the counterclaim was one of fact: that is, whether the property purchased by plaintiff from the town, the old direct-current machinery, "was in as good condition as on the date of said agreement [contract Exhibit A, entered into February 17, 1917], ordinary wear and tear excepted."

Plaintiff's witness T. J. Matthews testified, on direct examination, that he was the local manager of the plaintiff company; that the company extended its transmission line to the

**4. WITNESSES: cross-examination: discretion of court.** town of Winthrop from Masonville in 1917, and changed the direct-current system in the town to an alternating-current system by putting in transformers and running a primary line from the substation to the town; that the construction at Winthrop was completed and changed from a direct to an alternating current on December 21, 1917; that the accounts of the town of Winthrop were kept by him at Manchester. On cross-examination, the witness testified that he had the management of the Winthrop matter, and that his control of it commenced about September 3, 1917. Witness was then asked:

"Q. When did the electric company take over this plant and put it within your management or control? (The objection is made that it is not proper cross-examination. Overruled. Plaintiff excepts.) A. December 21, 1917."

Plaintiff complains that it was error to permit the witness to answer the question. We think there was no abuse of discretion in allowing the witness to answer the question, and it was not error. *Lowe Bros. & Co. v. Young*, 59 Iowa 364.

V. Plaintiff complains that it was not permitted to introduce evidence to show that the town sold at a profit electricity secured from plaintiff; to show the number of the town's customers for electricity; to show that the reasonable value of the electricity used by the town from December 21, 1917, to December, 1919, was in excess of the contract rates, and not less than 8½ cents per KWH per month, and that the actual cost of production thereof was not less than 7.1 cents per KWH per month, and that the cost of production of electricity in the Winthrop direct-current plant was not less than 9 cents per KWH per month. We think introduction of the testimony was properly refused. Plaintiff's action was based upon a written contract, in which the price was fixed, and could not be in dispute. Moreover, we have, as hereinbefore indicated, held that the trial court was right in holding the contract for the purchase of "electric current" void.

**5. EVIDENCE: materiality: recovery under void contract.**

Results in affirmance of the case.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.